IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

NOAH GLINSMAN,

      Plaintiff,

   v.

DR. MICHAEL THOMAS PUERINI,
DR. JOHN MICHAEL VARGO,
DR. JERRY RAY BECKER, and
JANE & JOHN DOES ##1-10,

      Defendants.

No. CV 06-1817-MO

OPINION AND ORDER

**MOSMAN, J.**,

    Noah Glinsman, a former inmate at the Oregon State Penitentiary ("OSP"), alleges the defendants (1) violated the Eighth Amendment and (2) were negligent regarding his medical care. The defendants filed a Motion for Summary Judgment (#28). First, because Mr. Glinsman has not properly served Jane and John Does ## 1-10, I DISMISS the claims against them. Second, because Mr. Glinsman provides no evidence that the other defendants provided inappropriate medical care or that they acted with deliberate indifference, I GRANT defendants' motion on Mr. Glinsman's Eighth Amendment claim. Third, because Mr. Glinsman's negligence claim must be brought against the State of Oregon, I GRANT defendants' motion on that claim as well.

## BACKGROUND

On January 9, 2005, Mr. Glinsman reported to OSP nursing staff that he was injured

when a metal door shut on his right arm. Nursing staff noted his fingers were blue and cold, he had a superficial abrasion on his right wrist, he was able to move all his fingers, and he was unable to rotate his wrist without pain. Nursing staff splinted his wrist, applied ice, administered Ibuprofen, and ordered X-rays.

On January 10, a general treating physician evaluated Mr. Glinsman. The physician had the notes from the nursing staff and a radiologist's report interpreting Mr. Glinsman's X-rays. The radiologist's report indicated no evidence of a recent fracture and said "if symptoms persist a follow up examination is recommended." (Puziss Decl. (#40) ¶ 10.) The treating physician also examined Mr. Glinsman and found he had a good range of motion and the swelling from the previous day had subsided. Based on these observations and the radiologist's report, the physician diagnosed a sprained wrist and recommended rest and range-of-motion exercises.

On January 17, Mr. Glinsman reported to nursing staff that his wrist had swollen up again. Nursing staff observed he had full range of motion in his wrist although he could only move it slowly. Nursing staff wrapped his wrist and provided Ibuprofen. Again on February 12, Mr. Glinsman reported pain and swelling in his wrist. Nursing staff referred him to his treating physician.

On February 15, the treating physician observed mild swelling and tenderness in Mr. Glinsman's right wrist. Based on these observations, the physician concluded Mr. Glinsman was still recovering from the January accident; the physician did not order additional X-rays but provided Motrin.

In March, Mr. Glinsman was transferred to the Columbia River Correctional Institution, and he did not complain about his wrist again until April 6. He reported to nursing staff that it

PAGE 2 OPINION AND ORDER

was painful to rotate his right wrist. X-rays were ordered. On April 12, a radiologist reported a healing fracture on the distal side of Mr. Glinsman's right wrist. The radiologist recommended an orthopedic consult with casting or splinting in the interim. On the same day, Mr. Glinsman went to Emanuel Hospital. An X-ray report from Emanuel Hospital noted a fractured distal right shaft ulna with minimal callous formation; continued use of the splint was recommended.

On April 19, Mr. Glinsman met with Dr. Jerry Ray Becker, a physician specializing in orthopedic surgery. Dr. Becker wanted to rule out any sort of pathologic cancer generated fracture. He ordered additional X-rays.

On April 29, Mr. Glinsman met with Dr. Michael T. Puerini, a general treating physician. Mr. Glinsman and Dr. Puerini discussed Mr. Glinsman's treatment history. Dr. Puerini also examined Mr. Glinsman; his wrist was splinted at the time. Dr. Puerini made arrangements to contact Dr. Becker about Mr. Glinsman's treatment.

On May 3, Dr. Becker met with Mr. Glinsman again. Based on the most recent X-rays, Dr. Becker concluded Mr. Glinsman had a non-pathologic fracture. The chart notes indicate he discussed treatment options with Mr. Glinsman, including surgery and other options. (O'Neil Decl. (#48) Ex. 7.) On May 4, the Therapeutic Level of Care Committee denied the surgery option. A document from the committee recommended four to six weeks of casting and said: "Patient has never been casted." (Docket #44, Pl.'s Ex. 5.)

Mr. Glinsman was scheduled to be released on May 11, and on May 10, Dr. Becker and Dr. Puerini discussed Mr. Glinsman's medical needs in light of his release the next day. Dr. Becker suggested a long arm (above elbow) cast in a neutral position. Dr. Puerini recommended this course of treatment to Mr. Glinsman that day. Mr. Glinsman refused a cast. He was released

PAGE 3 OPINION AND ORDER

the next day, May 11, 2005.

On December 20, 2006, Mr. Glinsman filed a Complaint (#1) under 42 U.S.C. § 1983 alleging two claims for relief. On January 3, 2008, the defendants filed a Motion for Summary Judgment (#28) against both claims.

## DISCUSSION

### I. Standard of Review

Summary judgment is proper when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court views the record in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If the movant initially shows that no genuine issue of fact exists for trial, the non-moving party cannot then rest on the pleadings but must respond with evidence setting "out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

### II. Claims Against the Doe Defendants

Mr. Glinsman names John and Jane Does ## 1-10 in his complaint. Defendants seek summary judgment on all claims brought against the Doe defendants. Mr. Glinsman does not identify any of the Doe defendants.

Federal Rule of Civil Procedure 4(m) requires that plaintiffs serve defendants within 120 days after filing a complaint. If a plaintiff does not do this, then the court "must dismiss the

PAGE 4 OPINION AND ORDER

action without prejudice against" the unserved defendants. "But if the plaintiff shows good cause . . . the court must extend the time for service . . . ." Fed. R. Civ. P. 4(m).

Mr. Glinsman has neither identified nor served the Doe defendants. Discovery closed on October 1, 2007, and Mr. Glinsman never substituted the names of real persons for the Doe defendants. Furthermore, he has not shown good cause for extending the time for service. Therefore, I DISMISS all claims against the Doe defendants.

### III.     Eighth Amendment Claim Against Dr. Becker

To prevail on an Eighth Amendment claim based on inappropriate medical care, a plaintiff must show (1) that the medical treatment was medically unacceptable and (2) that the treatment provider acted with deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion), proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. It is a "conscious disregard of an excessive risk to [a] plaintiff's health." *Jackson*, 90 F.3d at 332; *see also Farmer*, 511 U.S. at 836.

There is no evidence Dr. Becker provided inappropriate medical care to Mr. Glinsman or was deliberately indifferent to his needs. Dr. Becker took action to rule out any sort of pathologic cancer generated fracture, recommended surgery, and discussed casting with Dr. Puerini. After the Therapeutic Level of Care Committee denied a request for surgery, Dr. Becker discussed Mr. Glinsman's fracture with Dr. Puerini and recommended a long arm cast. All of

PAGE 5 OPINION AND ORDER

this occurred within three weeks. Mr. Glinsman does not present any evidence that Dr. Becker's treatment was inappropriate or deliberately indifferent. Thus, summary judgment on this claim is appropriate.

### IV.     Eighth Amendment Claim Against Dr. Puerini

There is also no evidence Dr. Puerini provided inappropriate medical care or was deliberately indifferent to Mr. Glinsman's needs. After Mr. Glinsman met with Dr. Becker, Dr. Puerini examined Mr. Glinsman and discussed his treatment history with him. Dr. Puerini also discussed casting the fracture with him; however, Mr. Glinsman refused a cast. Mr. Glinsman does not present any evidence that Dr. Becker's treatment was inappropriate or deliberately indifferent.[1] Thus, summary judgment on this claim is appropriate.

### V.     Eighth Amendment Claim Against Dr. John Vargo

Mr. Glinsman's Eighth Amendment claim against Dr. John Vargo also fails. Dr. Vargo's office was called on January 9, 2005, when Mr. Glinsman initially reported his injury. (*See* Docket #44, Pl.'s Ex. 3.) Mr. Glinsman also presents evidence that Dr. Vargo may have participated in his treatment on January 17, 2005. (*Id.*) These two pieces of evidence are insufficient to support the claim. There is no evidence indicating Dr. Vargo's medical treatment on January 17 was inappropriate.[2] There is also no evidence indicating Dr. Vargo acted with

---

[1] Mr. Glinsman does not present evidence that surgery was the only medically acceptable treatment option (*see* Puziss Decl. (#40) ¶ 20), and a mere difference of opinion with respect to diagnosis or treatment does not constitute a constitutional deprivation. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

[2] Based on expert opinion, Mr. Glinsman argues additional X-rays should have been ordered ten days after his injury. (*See* Pl.'s Opp'n Summ. J. (#39) 3.) Assuming this is true, Dr. Vargo would not have needed to order additional X-rays on January 17, only eight days after Mr. Glinsman's injury.

PAGE 6 OPINION AND ORDER

deliberate indifference on January 17—the only day he allegedly participated in Mr. Glinsman's medical care. Thus, the claim against Dr. Vargo must fail.

### VI.    Common Law Negligence Claim

Defendants argue Mr. Glinsman's negligence claim must be asserted against the State of Oregon. Oregon Revised Statutes § 30.265(1) states:

> The sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties and eligible for representation and indemnification under ORS 30.285 or 30.287 shall be an action against the public body only. . . . No other form of civil action or suit shall be permitted. If an action or suit is filed against an officer, employee or agent of a public body, on appropriate motion the public body shall be substituted as the only defendant. Substitution of the public body as the defendant does not exempt the public body from making any report required under ORS 742.400.

ORS 30.265(1) cannot be asserted if the accompanying liability limits in ORS 30.270 would result in an "emasculated version of the remedy that was available at common law." *Clarke v. Or. Health Scis. Univ.*, 175 P.3d 418, 434 (Or. 2007).

Mr. Glinsman's negligence claim can brought against the State of Oregon only. The parties do not dispute whether the defendants were acting within the scope of their employment, and all the evidence indicates they were. They do not dispute whether the defendants are eligible for "representation and indemnification under ORS 30.285 or 30.287," and the evidence indicates they are. Or. Rev. Stat. § 30.265(1). Mr. Glinsman also does not dispute the defendants' argument that application of ORS 30.265(1) does not result in an "emasculated version" of his remedy under common law. ORS 30.265(1) therefore applies and Mr. Glinsman's *sole* cause of action for negligence lies against the State of Oregon. Thus, Mr. Glinsman's negligence claim against the individual defendants fails. If the State of Oregon were substituted as a defendant in

PAGE 7 OPINION AND ORDER

the current case, the Eleventh Amendment would preclude a negligence claim against it in federal court. Mr. Glinsman may, however, have a negligence claim against the State of Oregon in Oregon State Court.

## CONCLUSION

Based on the foregoing, I DISMISS Mr. Glinsman's claims against the Doe defendants, and I GRANT defendants' Motion for Summary Judgment (#28).

IT IS SO ORDERED.

DATED this  22nd  day of April, 2008.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court